IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No.  2:22-cv-526 |
| ) | |
| PERRY HOMES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT**

The United States of America, by its attorneys, brings this suit against Perry Homes, Inc., and alleges as follows:

**Introduction**

1.  The United States brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act" or "FHA").  This action is brought on behalf of Alison Vitale, Jesse Noca, and Sarah Jamison.

**Jurisdiction**

2.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

3.  Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred in the Western District of Pennsylvania and because the Defendants and property at issue in this action are located there.

**Parties and the Subject Properties**

4. Defendant Perry Homes, Inc. ("Perry Homes") is a corporation incorporated in the Commonwealth of Pennsylvania. Its principal place of business is at 236 Lexington Drive, Cranberry, Pennsylvania, where it operates a rental office for the properties it owns and manages.

5. Defendant Perry Homes owns and manages Old Towne Rentals, a multi-family apartment complex located at 236 Lexington Drive, Cranberry, Pennsylvania ("Old Towne Rentals").

6. Old Towne Rentals consists of approximately 118 rental units. The units at 207 Fieldgate Drive and 129 Concord Way in Cranberry Township that are referenced in this complaint are part of the Old Towne Rentals complex.

7. Defendant Perry Homes owns other residential rental properties in Pennsylvania, including four units located at 312 McKim Street and two units located at 111A and 111B Hillside Drive, all in Zelienople, Pennsylvania.

8. Defendant Perry Homes also manages, but does not own, a two-unit rental property at 322 German Street in Harmony, Pennsylvania.

9. All properties identified in this Complaint are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

10. At all relevant times, Defendant Perry Homes had no written non-discrimination policy.

11. At all relevant times, Defendant Perry Homes had no written reasonable accommodation policy regarding emotional support animals for persons with disabilities.

## Factual Allegations

<u>Perry Homes' Actions Involving Alison Vitale and Jesse Noca</u>

12. On October 1, 2018, Alison Vitale and Jesse Noca signed a lease and moved into an apartment at 207 Fieldgate Drive, Cranberry Township, PA. Ms. Vitale and Mr. Noca rented the apartment until they moved out in May 2020. At all times during their tenancy, the apartment was owned and managed by Perry Homes.

13. Alison Vitale is a person with a disability and has a mental health impairment that substantially limits one or more major life activities. Ms. Vitale had a disability throughout her tenancy with Perry Homes while living at 207 Fieldgate Drive.

14. On April 7, 2020, Alison Vitale sent an email to Perry Homes requesting that Perry Homes grant an accommodation to its "no pets" policy to allow her to keep an assistance animal in her unit. Ms. Vitale explained that she had been diagnosed with severe depression and anxiety for which she had been receiving professional care over the previous five years. Ms. Vitale also attached a letter from the licensed professional counselor who was treating her for her mental health conditions.

15. In the letter that Ms. Vitale attached to her email to Perry Homes, Licensed Professional Counselor Saundra Diana stated that she had been treating Ms. Vitale for several months and was familiar with her history and the functional limitations imposed by her disability and mental health diagnosis. Ms. Diana wrote:

> Due to mental health diagnosis, Ms. Vitale has certain limitations regarding coping with stress. In order to help alleviate these difficulties and to enhance her ability to live independently and to fully use and enjoy the dwelling unit you own/and/or administer, I am advocating that she reside with an emotional support animal that will assist Ms. Vitale in coping with stressors that accompany her mental health diagnosis.

> I am familiar with the professional literature concerning the therapeutic benefits of assistance animals for people with disabilities such as that experienced by Ms. Vitale…. Should you have additional question[s], please do not hesitate to contact me.

16. Perry Homes then requested additional information from Ms. Vitale about her assistance animal, which she promptly provided, including health records for her emotional support dog, a boxer.

17. On April 16, 2020, Perry Homes responded to Ms. Vitale's request for an accommodation in a letter (sent electronically) that stated, in part, "we will grant reasonable accommodation for your animal to be with you in the leasehold **when you are living independently**. When you are not living independently, the animal is not permitted." (emphasis in original). The letter also stated, "[a]s you know, you lease the unit with another occupant [Jesse Noca]."

18. On April 17, 2020, Mr. Noca responded to Perry Homes' communication on Ms. Vitale's behalf and stated that Perry Homes had misunderstood the therapist's reference to Ms. Vitale's ability to live "independently," and that such term meant living life with greater autonomy, not living alone. He reiterated Ms. Vitale's need for the assistance animal and suggested that Perry Homes contact her therapist.

19. On April 21, 2020, Perry Homes' attorney sent a letter to Ms. Vitale stating in part: "[W]e have concluded that reasonable accommodation to the no-pets policy is not substantiated, but if you elect, we will permit the proposed animal to be with you at the leasehold if you are living alone. …. When you are not living alone, the animal is not permitted in the leasehold based on the no-pets policy term in your lease."

20. On April 30, 2020, Ms. Vitale wrote to Perry Homes' attorney reiterating that her animal was an emotional support animal and not a pet and suggesting that Perry Homes talk with

her treating therapist who could better explain the legitimacy and urgency of the accommodation request. Ms. Vitale also offered to discuss it with Perry Homes as well.

21. Despite her and Mr. Noca's recommendations that Perry Homes contact Ms. Vitale's counselor directly, no representative of Perry Homes ever spoke with Ms. Diana.

22. Perry Homes did not engage in any good faith interactive process with Ms. Vitale or Mr. Noca regarding Ms. Vitale's accommodation request.

23. On April 30, 2020, Perry Homes' attorney sent Ms. Vitale an email, reiterating that Perry Homes had concluded that her reasonable request was "not substantiated." The email stated that Ms. Vitale's dog would not be allowed in her unit unless there was a "ruling in [Ms. Vitale's] favor" in the Department of Housing and Urban Development's complaint process. Perry Homes' attorney stated further: "Your immediate compliance to remove the dog is mandatory. If not, this reply shall also serve as Notice to Quit. My client too will need to seek legal action to address this situation and obtain possession of the unit based on violation of the no pet policy term of the lease."

24. Around this time, on or about April 30, 2020, Perry Homes' attorney also telephoned Ms. Vitale and informed her that she and Mr. Noca had to be out of the leasehold within 48 hours or the police would be called and they would be evicted. The attorney's call frightened Ms. Vitale so much that she left her apartment and moved in with her parents.

25. The next day, six months before their lease term was due to expire, Mr. Noca informed Perry Homes that, due to Perry Homes' ultimatum, he and Ms. Vitale would be vacating the unit before the end of May 2020. Mr. Noca stated that the rent for May 2020 had already been paid and requested that Perry Homes waive the remainder of the 60-day notice required for lease termination, allowing the lease to terminate at the end of May.

26. On May 6, 2020, Perry Homes informed Ms. Vitale and Mr. Noca that they would be held to all lease terms.

27. On or around May 28, 2020, Ms. Vitale and Mr. Noca vacated their unit at the Perry Homes property due to Perry Homes' denial of Ms. Vitale's reasonable accommodation request.

28. Perry Homes refused to return Ms. Vitale's and Mr. Noca's security deposit, and charged them unjustified fees claiming damage to the apartment.

29. As a result of Perry Homes' discriminatory conduct, Ms. Vitale and Mr. Noca suffered damages, including but not limited to, out of pocket damages and emotional distress damages.

30. Alison Vitale's request for an emotional support animal was reasonable, and would not have resulted in an undue burden or a fundamental alteration in Perry Homes' policies.

31. Alison Vitale's request for an emotional support animal was necessary to allow her an equal opportunity to use and enjoy her dwelling, and alleviate the symptoms of her mental health conditions.

32. But for Perry Homes' denial of Ms. Vitale's accommodation request that forced her and Mr. Noca to move, Alison Vitale and Jesse Noca would have remained in the unit for the rest of their lease term through September 30, 2020.

## Perry Homes' Actions Involving Sarah Jamison

33.     On September 1, 2020, pursuant to the lease they had signed, Sarah Jamison and James Sabatino moved into an apartment at 129 Concord Way, Cranberry Township, PA.  Ms. Jamison and Mr. Sabatino currently reside at 129 Concord Way.  At all times during their tenancy, the apartment has been owned and operated by Perry Homes.

34.     Throughout her tenancy and at the time of her reasonable accommodation request, Sarah Jamison has been a person with a disability; she has a mental health impairment that substantially limits one or more major life activities.

35.     Sarah Jamison had benefitted from the companionship of a cat in the past, which had ameliorated the effects of her mental health impairment.

36.     On October 21, 2020, Ms. Jamison emailed Perry Homes identifying her mental health condition, stating that she was considering obtaining an emotional support cat to help her manage her condition, and asking Perry Homes about its process for obtaining approval to have an emotional support animal live with her.  Ms. Jamison stated that she had a medical appointment scheduled and wanted to know what Perry Homes would require in terms of paperwork to support her request for a reasonable accommodation to enable her to keep an emotional support animal.

37.     On October 22, 2020, Perry Homes responded by letter, stating that it was "in receipt of your request for an emotional support animal."  The letter noted that Perry Homes would need documentation relating to Ms. Jamison's condition or disability and the connection between her disability and the function the animal serves.

38.     On October 23, 2020, Ms. Jamison provided Perry Homes with a letter from a nurse practitioner at the medical office where Ms. Jamison was a patient in response to Perry Homes'

request for documentation to support her request for an accommodation. In the letter, the nurse practitioner stated:

> [Ms. Jamison] has been under our care for several years now and I am aware of her medical history. I am also very aware of the professional literature stating the therapeutic benefits of an emotional support animal and I feel that Sarah would benefit greatly from having a cat live with her for this reason.

39. In the days that followed, Ms. Jamison contacted Perry Homes to ask about the status of reasonable accommodation request. On October 27, 2020, Ms. Jamison wrote to Perry Homes:

> I have had anxiety since my freshman year of high school and the only thing that had gotten me through everything through high school and college was my cat. The past week or so I have been having bad anxiety attacks with being home alone due to [my boyfriend] working night term and not being home. All I am looking for is to have a companion to hopefully not have these attacks any longer. At this point this is a matter of my mental and emotional health.

40. On November 4, 2020, Perry Homes replied that the information provided did not establish that Ms. Jamison had a disability.

41. On November 9, 2020, Ms. Jamison provided a revised letter from the nurse practitioner that identified her specific diagnosis. In the second letter, the nurse practitioner stated:

> [Sarah Jamison] has been under our care for several years for generalized anxiety disorder and I am aware of her medical history. I am also very aware of the professional literature stating the therapeutic benefits of an emotional support animal and I feel that Sarah would benefit greatly from having a cat live with her for this reason. I am writing to ask for your consideration for this request due to disability related reason that limits her activity unless she is able to have a pet.

42. On December 31, 2020, Perry Homes' attorney sent Ms. Jamison a letter stating that, notwithstanding the additional documentation provided by her treating nurse, it stood by its previous determination to deny Ms. Jamison's reasonable accommodation request.

43. Despite the nurse practitioner's offer on behalf of Ms. Jamison that Perry Homes contact her directly, no representative of Perry Homes ever spoke with the nurse practitioner.

44. Perry Homes did not engage in any good faith interactive process with Sarah Jamison regarding her accommodation request.

45. As a result of Perry Homes' discriminatory conduct, Sarah Jamison suffered damages, including, but not limited to, emotional distress damages.

46. Sarah Jamison's request for an emotional support animal is reasonable, and would not have resulted in an undue burden or fundamental alteration in the policies of Perry Homes.

47. Sarah Jamison's request for an emotional support animal is necessary to allow her an equal opportunity to use and enjoy her dwelling, and alleviate the symptoms of her mental health conditions.

### HUD Complaint and Charge of Discrimination regarding Alison Vitale, Jesse Noca, and Sarah Jamison

48. On May 6, 2020, Alison Vitale filed a timely complaint of housing discrimination with the U.S. Department of Housing and Urban Development ("HUD") against Perry Homes. On August 19, 2021, the complaint was amended to add Alison Vitale's boyfriend and co-tenant, Jesse Noca.

49. On December 29, 2020, Sarah Jamison and James Sabatino filed a timely complaint of housing discrimination with HUD against Perry Homes.

50. In accordance with 42 U.S.C. § 3610, the Secretary of HUD completed an investigation of the two complaints, attempted conciliation without success, and prepared a final

investigative report.  Based upon the information gathered in the investigation, the Secretary determined under 42 U.S.C. § 3610(g)(1) that reasonable cause existed to believe that Defendant Perry Homes had violated the Fair Housing Act by discriminating against Alison Vitale and Jesse Noca, and against Sarah Jamison.

51. On February 24, 2022, the Secretary issued a Charge of Discrimination under 42 U.S.C. § 3610(g)(2)(A), charging Defendant Perry Homes with engaging in discriminatory housing practices on the basis of disability.  Specifically, HUD's Charge of Discrimination alleged that the Defendant Perry Homes violated 42 U.S.C. §§ 3604(f)(1), 3604(f)(2), and 3604(f)(3)(B) as to Alison Vitale and Jesse Noca, and violated §§ 3604(f)(2) and 3604(f)(3)(B) as to Sarah Jamison.

52. On March 6, 2022, Defendant Perry Homes elected under 42 U.S.C. § 3612(a) to have the claims in the HUD Charge resolved in a civil action filed in federal district court.

53. On March 7, 2022, the HUD Administrative Law Judge issued a Notice of Election to Proceed in United States District Court.  Following the Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action under 42 U.S.C. § 3612(o).

## Count I – Fair Housing Act Violations

54. The allegations described above are incorporated herein by reference.

55. Alison Vitale and Sarah Jamison are persons with a disability within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h).

56. By taking the actions set forth above, Defendant Perry Homes has:

    a. discriminated in the rental, or otherwise made unavailable or denied a dwelling to a renter because of a disability of that renter, or any person

        associated with that renter, in violation of 42 U.S.C. § 3604(f)(1), as to Alison Vitale and Jesse Noca;

    b.    discriminated in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability of that renter, or any person associated with that renter, in violation of 42 U.S.C. § 3604(f)(2), as to Alison Vitale, Jesse Noca, and Sarah Jamison;

    c.    refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford Alison Vitale and Sarah Jamison an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B);

57.    As a result of the actions of the Defendant Perry Homes as set forth above, Alison Vitale, Jesse Noca, and Sarah Jamison have been injured and suffered damages, and are "aggrieved persons" within the meaning of 42 U.S.C. § 3602(i).

58.    Defendant Perry Homes' actions were willful and intentional, and in reckless disregard for the law.

## Prayer for Relief

WHEREFORE, the United States requests that the Court enter an Order that:

1.    Declares that the conduct of Defendant Perry Homes violates the Fair Housing Act as to Alison Vitale, James Noca, and Sarah Jamison;

2.    Enjoins the Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from discriminating on the basis of disability,

in violation of the Fair Housing Act, and failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future;

3. Enjoins Defendant Perry Homes from refusing to permit Sarah Jamison to have an emotional support animal in her unit during her tenancy;

4. Awards monetary damages to Alison Vitale, Jesse Noca, and Sarah Jamison, under 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

5. Awards such additional relief as the interests of justice may require.

Dated:  April 5, 2022

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

CINDY K. CHUNG
United States Attorney
Western District of Pennsylvania

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

  /s/ Jacqueline Brown
JACQUELINE C. BROWN
Assistant United States Attorney
Civil Division
Office of the U.S. Attorney
Western District of Pennsylvania
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
Tel: (412) 894-7565
Fax: (412) 644-6995
E-mail:  jacqueline.c.brown@usdoj.gov
PA Bar No. 330010

  /s/ Beth Pepper
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
CATHERINE A. BENDOR
Special Litigation Counsel
BETH PEPPER
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC  20002
Tel: (202) 340-0916
E-mail: Beth.Pepper@usdoj.gov

*Attorneys for Plaintiff United States of America*